First case for argument this morning is 24-1846, Wildseed Mobile versus Google. Mr. Albert Arperty. Good morning. May it please the court. This appeal turns on two dispositive claim construction errors. The first error made by the board affects all claims. And with respect to that error, the board interpreted the phrase taken from a message to mean things as far as a human-style takeaway, an inference, or some complex derivation. However, when read properly in the context of the 414 patent, the phrase taken from a message should have been interpreted to mean extracted from a message. That is, that the information was extracted from a message that was on the cellular device. The second dispositive claim construction error affects claims 2, 3, 10, and 13. And there, the board clearly ignored the antecedent basis of the phrase the provided information, which ties back to the information that was extracted from the message in claim one. When read properly in context, the prior art did not teach that, and the board never addressed that issue. Well, the challenge you have in this case is that even though you've got a favorable standard of review, i.e. de novo, the board did a really thorough review. I mean, on the taken, I don't know how many pages, but it's a lot of pages. And they met every single one of your arguments, figure eight, the words in the specification, the file history. So show me the error. Show me where they really were wrong in construing it based on the spec and the arguments you made to the board. Well, it begins with the framework that they adopted. They turned the Phillips standard sort of in reverse. They started with a generic dictionary and pointed to some definitions about taken, which could mean certainly a lot of different things. But you have to start with the patent claims in the context of the specification. So starting with the claims at appendix 86, we'll see that claim one clearly states that the information is first associated with the user of the cellular device, and that information is taken by the cellular device. So we're not talking about information taken from a human user, such as maybe information that you might take from listening to a lecture or from reading a book. We're talking about- I take your point. But as you recognize, there are a lot of definitions, and some of them are broader than others. And it clearly means, and I think the board would agree, what you say it means. But that doesn't preclude it from being broader and meaning other things. And so starting from the premise that there was no disavowal here, no lexicography here, what is it in the specification that we should take away to be clear that your definition is the correct one? Well, first we have to consider the specification and what is disclosed in the context of the time of the invention. And at that time, we're talking about a cellular device, which is doing the taking here. Again, it's not a human user. And we're talking about a cellular device era 2001 and 2002. Those had rudimentary operating systems, limited processing capacity, limited memory. That was not like today's iPhone, for example. You could not run a large language model on a device like that. Is there intrinsic support for that, or is that all extrinsic evidence? There is intrinsic support, specifically when it discusses the cellular device. And its capabilities versus the server and its capabilities. So the server, for example, is discussed at Appendix 83 and 84 from Column 6, Lines 45 through Column 7, Line 34. And there you see it's discussing a very robust system with a server operating system, mass storage, the ability to run databases. However, when the client device is explained, it's described without having any of those capabilities. Does it speak there, though, of the inability to take information other than, or the limited ability to take only the verbatim data that's there? Well, first, I'd like to address the verbatim issue briefly. The verbatim was a language that was really, it's a straw man that Google introduced in its briefing. We never asked for verbatim to be the construction. We wanted the construction to be extracted, which, of course, could involve some normalization, parsing, things of that nature. So if you take something from a message, you don't have to take the exact same thing bit for bit. I thought, though, you intended taken to be limited to you can only take something that's there. Maybe you don't have to take all of it, but you can't take something that's not there. Correct, correct, and my point, Your Honor, was just that it could involve some normalization. It doesn't necessarily have to be a bit for bit extraction. Of course, there may be parsing, things like that. I don't understand what you mean by that. Where's the boundaries on that? Can you extrapolate from the information in the email to come up with other information that follows from that? No, that is where we draw the line. What's the difference between normalization and extrapolation? So extrapolation would be you're analyzing. Why don't you try defining normalization and explain to me what you mean by that? So, for instance, if you have a sentence that says, I like to play golf, we're not saying that the entirety of that sentence in that exact same format has to go from point A to point B, but you have to take something from that. So maybe you take the word golf. So you do think it has to be verbatim. It just doesn't have to be the entirety, but it has to be verbatim from the text. Well, you have to take something that's actually in there. Again, it doesn't have to be, say, a bit for bit copying. But it has to be actually in there in that word, and so you don't have to copy the whole thing, but what you copy, you're copying exactly. Correct, or you could copy several words. They don't have to be in the exact same order. You could copy you. You can copy golf. Setting that over. That's verbatim. That's verbatim. It's just not entirety of verbatim. Yeah, I don't want to get into a discussion of what exactly verbatim is. Well, you're the one that just got up here and started throwing around the word normalization, which if it's in the patent, you can show it to me and explain what it means, but it sounded an awful lot like taking what was there and drawing inferences from it and normalizing it, and that's what you say you can't do, and you did that to rebut the notion that they've created a straw man at verbatim, but it sounds an awful lot to me like you actually mean verbatim, not in its entirety, but in specific words. Well, again, specific words I agree with, but do they have to appear in the exact same order? That's not what we're arguing. What about the board at appendix 14 and 15 discusses the GPS example and about deciding locations and from that determining location? Talking about stuff outside that you're going through. The GPS example relates to a different module. The module that we're discussing that's related to this claim is the other sources module, and when you read the specification with respect to the other sources module and the decision block that goes along with figure eight, the way it's described is you just take that information from that module and that is added, and for example, if you look at appendix 86, it talks about that decision block in figure eight. It says at decision block 818 when the determination is true, the process advances to block 820 where the other source information is added. So there's no inference being made. There's no analytical LLMs being run to make these complex determinations. Instead, the information is taken and it's sent to the server, which does the determination, and again, going back to the claim language, the claim language is careful to say on one hand the client device, which would, again, at the time you're talking about a thin type device that's running limited applications, that device takes that information, it sends it to the server, and then the server, upon receiving that information, determines a proper add. So on one hand, the claim's saying you're doing some sort of determination at the server, which could be a more complex operation versus a simple operation, which is just taken from. Sorry, go ahead. No, I was gonna give a couple, I suggest a couple of minutes on the other issues. Can I just one more on this? A12 is where the board says there's only one sentence in the whole specification that really has anything to do with the taken question and it doesn't help you. Is there somewhere else in the specification that you would say there is discussion as to what has to be taken? I would say, other than what I've already repeated, you have to consider it in the context of 2001-2002 sign-in devices, but I don't disagree with that statement. If I could get to the dependent claim issue quickly. Again, from Appendix 86, when you look at claims two and three, the claims clearly state that the provided information includes some additional specificity or added limitations. The provided information can only refer to the information that is provided in claim one. And in fact, Google, in their brief at page 60, admits that the provided information in claim one is the information that is taken from the message. So if the provided information in claim one is taken from a message, there can be no doubt that under the basic law of antecedent basis, because we're using the definite article the, the provided information in claims two and three has to be the information that was taken from a message. And if your honors don't have questions on that, I would reserve the rest of my time for rebuttal. Thank you. Yep. Ms. Curtis, good morning. Good morning, your honors, and may it please the court. Tara Curtis, on behalf of Google, with me is my colleagues, Dan Bagatelle and Jonathan Teets. The board got it right when it determined that all the claims were unpatentable. Claim one's information taken from a message limitation uses the ordinary meaning of taken. And your honor was correct that the board did a very thorough and thorough analysis and found that the taken limitation is not limited to just extracting verbatim language from a message. It includes deriving some information, for example. The answer to that is that in this context, I mean, yeah, taken can mean many things, but perhaps one of the more natural things is that it would be limited to taking something, taking one thing and putting it somewhere else. And your friend says, in this surrounding space, that's the best and the fairest meaning of taking. I disagree with that. In the context of the specification here, the information taken from a message can certainly be extracted verbatim, and it can also be derived. There's no limitation, there's no preclusion of that derivation piece of it. If you look at figure eight and the description of it, it has that step for adding information from a module, and then it has the generating step, the figure itself at step 822 says generate information to send to the server. And remember, the claim language here is providing information to a server. And so. Are there any limitations to the kind of information that can be derived? Well, certainly it has to have some basis in the message. For example, if the message said, let's play golf, you're not gonna derive from that that the recipient is a bowler, for example. But there has to be certainly some connection from what can be derived from the information in the message, but it does not have to be literally taken verbatim from the message and given to the server in the exact form. There is some sort of inference that can occur. The claims don't. So for golf, if you have let's go play golf, the obvious thing would be to show them here are all the golf courses in an area that you can play golf. Would it also include ads for sporting goods stores that sell golf equipment? It could, perhaps. There's no limitation in the claims or in the specification to sort of the extent of what can be derived. It just has to have some basis in the language of the message. And that would be something that's up to the designer of the system. But in your view, just picking up on Judge Hugh's question about golf, if the message doesn't have the word golf in it, but the message says tee time is at 5 p.m., now I guess that could mean literally tee, or that could mean golf. But is that the kind of thing you're talking about, that from that you can derive or extract that things about golf? Yes, I think you could derive or extract some information from the message that says tee time at 5 p.m. And just so your honors are aware, we do have that in- What about I'm having a Super Bowl party, and then they send you an advertisement for beer? Certainly, there's no limit to what is derived and the extent of it. It just has to have some basis in the message. But the evidence in the record, we have from our expert all sorts of ranges of information, words that are in a message and information that can be derived from it. And so I don't know that we need to figure out the exact limits of it, because we certainly have evidence in the record here that is well within even the most direct, let's play golf, you take from that, that the user or the recipient could perhaps be a golfer. I wanted to speak briefly on the- But under his definition, right? Taken, as he described it, is not, you don't have to take the entire phrase, you can pick up a word. So that taking golf from, we're playing golf at 6 p.m., is exactly the way he would want to define taken, not. And you think it's broader than that? I think that's correct. Certainly, let's play golf is within both parties, I think, definitions of taken from a message. And I did want to- Two points that your friend on the other side made. First, you referenced figure eight and step 822. They argue that that's after the taken step. So it's irrelevant. They're not disputing you on that, because it's a step that happens later. And also they suggest that there's a methodological problem with the claim construction the board engaged in, that it started with dictionaries when it shouldn't have done that. Could you address those two issues? Sure, your honor. On the first point, on the step of figure eight and step 822, the claim language we're dealing with here is providing information to a server. So you have to look at the whole process of looking at the message, and then what gets provided to the server. Looking at it in that appropriate context, figure eight has the step of adding the information from the module, and then it has that step 822 that says generate information to provide to the server. So that generating portion is within the process of taking information from a message to provide it to a server. If all we're worried about is that initial taking step, then the prior art does that, your honor. The only thing that it can possibly read from a message that says let's play golf is the word golf. And so if we're just looking at that very first initial look at the message element, that's well within the prior art. On the second point as to the framework that the board relied on, the board looked at the claim language, it looked at the specification, and then it used extrinsic evidence just to sort of shore up and confirm that its understanding of taken from a message from the claims and the specification aligned with the ordinary meaning of that term as would be used in normal parlance. And so it certainly didn't start with a dictionary definition and try to backfill information to get to that from the claims and the specification. I did want to briefly address the... Can I ask one more question about that? In your brief, I think you allow for even if they're right, even if their definition is the appropriate one that you should prevail in any event because Kowalski or whatever the prior art is, right, covers that as well. The board never dealt with that issue, right? That's correct, your honor. We do have an alternative argument that even under Wild Seeds definition, Kowalski, the prior art reference, teaches that same extraction that Wild Seed would push for. The board did not reach that alternative argument because it agreed with our definition in the first instance, but it is something that was raised to the board. And was it in the petition? Did you offer the alternatives in the petition or did this kind of claim construction get raised later on in the process? It came a little bit later on after Wild Seed proposed its claim construction. It came up in our expert's deposition and in his reply declaration. So they had opportunity to address that as well in their reply at the hearing. Briefly on the point about whether a cell phone could do this sort of inference, we do have evidence from our expert, Dr. Hu, at appendix 2288 where he says that a cell phone of that era could be programmed to perform the algorithms and the functions necessary to do that deriving. And so there was nothing really to rebut that. And so there is evidence in the record that a cell phone could do the exact type of simple derivation. Is that sort of a dispute between the intrinsic evidence, the specification portions that your friend on the other side directed us to, and your extrinsic evidence? Is that what we have here, a dispute about what cell phones could do in the early 2000s? No, I don't think so, Your Honor. I think the claim language and the specification are very clear as to what's happening in the claims. And there's no issue of whether a cell phone is capable of performing that act. That would be more of, I guess, of an infringement question and less of a claim construction, which we certainly don't need to get into a battle of the experts here. If there are no further questions on claim one, I'll move on briefly to the dependent claims here. So the dependent claims have this phrase that has the additionally included information, number of categories of preferences, demographic information, things like that. That phrase is agnostic as to the source of the information. In claim one, the provided information, or the information that is provided to a server is the information associated with a user. Now, it says that the subsequent clause is that the information is taken from a message, but that doesn't preclude other sources of information. It's a comprising claim, let's remember that. And the recitation then in claim two of the provided information additionally includes refers back to that initial clause of providing information to the server. And so it's not a subset of the information that is taken from a message, it's in addition to, and it specifically uses that addition in addition to language. And if we look at the specification, it's really the only interpretation that makes any sense. The specification has these separate modules that specifically provide the types of, and the categories of information that are recited in claim two. It has the behavior module that provides information about what's happening on the user's cell phone. It nowhere describes this very, very narrow act of deriving or taking, sorry, these other categories of information from specifically from a message from a user. And so we think that the only reasonable reading of this claim language that aligns with the specification is the boards. Your friend made some reference, if I'm recalling correctly, to an admission you made at page 60 of the red brief. Do you recall what he said at the end? I believe, yeah, I believe he was referring to the fact that the second clause, the information taken from a message derives antecedent basis from the first clause in claim one, the providing information to a user. That's correct, but that doesn't limit the information that gets provided to the server to only information taken from a message. And again, in claim two, it says the information additionally includes those other categories of information. And so nothing in the claim, even if that second phrase is referring back to the first phrase, the claim to the provided information likewise refers back to the providing information to the server. And I'll note that in claim one, the phrase is the information taken from a message. It doesn't say the provided information, whereas in claim two, it does specifically say the provided information. And so it's not as if those two phrases must have the exact same scope because they use different phrases. If there are no further questions, I'll ask that the court affirm the board's decision. Thank you.  Hey, police and court. I'd like to make a couple points on rebuttal here. First, being the support for taken from, meaning an extraction. And I'll note that the provisional application, which we haven't discussed today, provides the exact type of example that we're talking about where a user A sends user B a message along the lines of I'm watching a TV show or I'm listening to a good song on the radio. That message is sent and that specific information is used to tune into that TV or that radio station. And that is at appendix 1087. With respect to the board's analysis, the board never considered under the proper construction of extraction in making their ruling. And when you look at Kawasaki, the record's clear that Kawasaki teaches a derivation and it does not teach taking something from a message and passing it to the server. With respect to the dependent claims, first of all, the brief at page 60 is very clear. They say that the provided, they agree that the provided information in claim one is information taken from a message. If that is the case, and we agree wholeheartedly that that is true, that the provided information in claims two and three can only be the information that is taken from a message. And with respect to the specification, it actually does make sense when you take a look at the specification at appendix 85, column 10, it's explaining that all of these different pieces of information that you could get from a behavior module or these other modules, at the very end it says, well, you can also get this type of information from the other source module, which is what is taking that information from a message. So the idea that the reading of claims two and three doesn't make sense, it is simply untrue based on a reading of the patent specification and the provisional as well, which teaches extracting content from a message such as a TV show or a radio show and tuning into that. So with those two issues, unless your honors have any other questions, I'll rest. Thank you. Thank you. Thank both sides, the case is submitted.